No. 25,572.

WILLIAM A. MATHEWSON and LUCY E. MURRAY, *Appellees*, v. B. F. McLEAN, as Mayor, etc., et al., *Appellants*.

SYLLABUS BY THE COURT.

MANDAMUS — *Eminent Domain — Contract by City to Maintain a Private Bridge Over a Public Drainage Canal—Contract Ultra Vires.* A city undertaking to drain storm waters by means of a canal constructed beyond its boundaries, pursuant to chapter 92 of the Laws of 1911 (R. S. 13-1055), has no authority to agree with an owner whose land is divided by the· canal to maintain a bridge over the canal as partial compensation for the appropriation.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed January 10, 1925. Reversed.

*Robert C. Foulston,* and *George Siefkin,* both of Wichita, for the appellants.

*Jean Madalene,* of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one of mandamus, commenced by landowners against the city of Wichita and its officers, to compel restoration and maintenance of a bridge across a drainage canal constructed by the city. Plaintiffs recovered, and defendants appeal.

Desiring to provide an outlet for storm waters, the city proceeded, under chapter 92 of the Laws of 1911 (R. S. 13-1055), to acquire right of way for a drainage canal and to construct a drainage canal extending from the city limits to a stream less than five miles distant. Under the statute, the city may cause plans and specifications and an estimate of cost to be made by an engineer. On approval by the city, the plans, specifications and estimate are submitted to the board of county commissioners. On approval by the board of county commissioners, the city may make the improvement. The right of eminent domain is granted to enable the city to procure the necessary land. Funds to meet cost of obtaining necessary land and cost of constructing drain may be provided by equal bond issues of the city and county, the city's bonds to be paid by taxes levied on all property in the city, and the county's bonds to be paid by taxes levied on all property in the county.

The canal divided land of plaintiffs' ancestor, William Mathewson. Right of way for the canal, consisting of 4.7 acres, was deeded to the city by Mathewson, in consideration of the sum of $3,000 and an obligation stated in the deed, as follows:

"Party of the second part is to maintain a private bridge across the drainage canal, to be constructed on the above-described premises by said second party. Said private bridge for use of grantors to be constructed within ninety days after the excavation for said drainage canal through the above-described premises is made, and said bridge to be constructed at such points as parties of the first part, their heirs, successors or assigns shall designate."

In the year 1912, and pursuant to the deed, the city built a bridge over the canal, which became unsafe early in 1923, and which was destroyed by flood later in that year.

The bridge was built upon land lying outside the boundaries of the city, and constituted no part of the canal. The canal was complete without the bridge, and fully satisfied the public duty to provide an outlet for storm water falling and collecting within the city. The bridge was not built pursuant to any public duty resting on the city to keep highways free from obstruction occasioned by construction of the canal. On the other hand, the bridge itself constituted a private viaduct whereby the landowner might pass from one side to the other of a tract of his land severed by the canal. The result is, the only relation the bridge could have to discharge of a public duty by the municipality lay in the fact that its erection and maintenance were designed to stand in lieu of statutory compensation for appropriation of the land.

Being a natural person, the landowner was free to act as he pleased with reference to appropriation of his land for construction of the canal. He could acquiesce in the appropriation, he could waive statutory ascertainment and payment of compensation, and he could accept whatever satisfied him by way of compensation. The city possessed no such capacity. It is a public corporation, and was obliged to find in the statute book a grant of power for whatever it did in reference to establishing the canal. Assuming that the city had the capacity of a private corporation to contract generally with a landowner respecting compensation for appropriation of land, the landowner would have an adequate remedy at law for breach of the contract. (*K. P. Rly. Co. v. Hopkins*, 18 Kan. 494.) It is not permissible, however, to make the assumption. The city was authorized to procure land upon which to construct the canal. The landowner was entitled to compensation, and nothing else. To give him more would be to make a gift of public money for private benefit. The elements of the transaction were simple, definite, and certain, and it was the city's business to close it up by discharging its liability to pay compensation. It lacked capacity to create a new contract liability, uncertain in extent and indefinite in duration.

The principle involved was stated and applied in the case of *Haucke v. Morris County*, 115 Kan. 659, 224 Pac. 64. In that case land was taken for a public road which divided a pasture in such a way that water for stock was wholly on one side of the road. In satisfaction of the landowner's damages, the county board agreed to build and maintain a passageway for stock across the road. A passageway was installed which failed to serve the purpose intended, and the landowner sued for damages for breach of contract. It was held the contract was *ultra vires*. In the opinion the court said:

"While the board of county commissioners represent the county and are entrusted with the control of all its business and financial affairs, their powers are limited by statute. The enumerated powers do not authorize boards to enter into contracts to build and maintain runways for the convenience or benefit of landowners. (R. S. 19-212.) When a road is opened claims for damages may be considered and determined, and if the awards made are not satisfactory appeals may be taken to the district court. (R. S. 68-106, 68-107.) In the absence of express authority the damages sustained by a landowner cannot be adjusted or allowed in any manner other than is prescribed by statute. Every landowner is bound to take notice of the powers conferred on the board, and cannot insist on the fulfillment of promises or agreements which the board was without authority to make." (p. 660.)

In this instance the city did not possess, either by express grant or by necessary implication, power to build and maintain a bridge over the canal for private use of the owner whose land was appropriated.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendants.