[Civ. No. 2778.    Third Appellate District.—October 16, 1924.]

JOHN CUNNING, Respondent, v. THOMAS K. CARR, as Auditor, et al., Defendants; T. H. SELVAGE, Intervener and Appellant.

[1] OFFICE AND OFFICERS—DETERMINATION OF STATUS—LEGAL DUTIES. It is the work to be performed or the duties to which one may be assigned that determines his status as an officer or an employee; and the mere fact that an employee may perform services not coming strictly within the duties imposed upon him by reason of his employment, or which may be exercised by him in common with other citizens of the state, does not change his status from that of an employee to that of an officer, or from that of an officer to that of an employee.

[2] ID.—DUTIES OF DISTRICT ATTORNEY—STATUS OF EMPLOYEES.—In this proceeding in *mandamus* to compel the payment of the claims of certain persons who had been employed by the district attorney, under and by virtue of the provisions of section 4307 of the Political Code, there was nothing in the record which indicated that any one of petitioner's assignors was authorized to exercise any of the powers or was vested with any of the powers or was authorized to perform any of the duties attached by law to the office of district attorney.

[3] ID. — DUTIES OF SHERIFF OR CONSTABLE — INCREASE OF COMPENSATION — EMPLOYMENT OF HELP BY DISTRICT ATTORNEYS. — Neither section 4157 nor section 4187 of the Political Code requires either

1. Private detectives as public officers, note, Ann. Cas. 1917A, 584. See, also, 22 R. C. L. 398.

Distinctions between office and employment, notes, 17 Ann. Cas. 451; Ann. Cas. 1917D, 319. See, also, 22 R. C. L. 380; 21 Cal. Jur. 824.

2. Power of prosecuting attorney to employ detectives, note, Ann. Cas. 1915B, 861. See, also, 9 Cal. Jur. 603.

3. See 22 R. C. L. 534.

a sheriff or any constable to act in the capacity of sleuth or detective; and if anyone is employed by the district attorney to perform services outside of the duties cast by law upon the sheriff or a constable, none of the provisions of the state constitution relating to the salaries of such officers are in any way affected, nor does the fact that such persons may go further and make arrests as private individuals may do, after having completed their investigations, in anywise cause their employment to trench upon the inhibitions of the constitution relating to the increase of the compensation of such officers by relieving them of the performance of certain duties.

[4] ID.—CHARACTER OF EMPLOYMENT—LENGTH OF SERVICE.—The mere fact that an employee by the day may work a considerable number of days, or for a considerable number of months, does not change the character of his employment if his employment is otherwise authorized by the codes.

[5] ID. — NECESSITY FOR EMPLOYMENT — DETERMINATION BY SUPERVISORS AND DISTRICT ATTORNEY — JURISDICTION OF COURTS. — The necessity for the employment by the district attorney of persons to detect crime and gather testimony or evidence showing the persons guilty of criminal offense in the county, and the determination of such necessity, rests with the district attorney and the board of supervisors; and, in the absence of fraud, the determination of the necessity by the board of supervisors and the district attorney has the same weight as a finding of fact by a trial court in any contested case and relieves the court, in a proceeding in *mandamus* to compel payment of the claims of said persons for compensation for services rendered, of any inquiry further than to ascertain if the board of supervisors and the district attorney had jurisdiction under the law to determine the necessity for the employment, and to make the employment and fix the compensation.

[6] ID.—KNOWLEDGE OF COMMISSION OF CRIME—CONTINUING CHARACTER—RIGHT TO EMPLOY DETECTIVES.—The fact that the district attorney is conscious that the motor vehicle laws and the liquor laws are being violated, although he may not be able to put his hand on the violation, does not render the employment of someone to detect the guilty parties any less within the provisions of the code sections than if the circumstances coming to the attention of the district attorney indicated that someone had committed the crime of murder; nor does the fact that violators of the motor vehicle laws and the liquor laws are constant and continuous tie the hands of the district attorney in regard to the employment of someone to detect the offenders.

[7] ID.—POWER TO EMPLOY DETECTIVES—CHARACTER OF CRIMES—INTENT OF LEGISLATURE.—While the legislature may not have contemplated at the time of the adoption of the code the violations of the motor vehicle laws and the liquor laws, the general language

of the code indicates that the legislature had in mind the conferring upon the district attorney the power to employ persons to detect the commission of any crime whatsoever without any reference to its particular designation; and the fact that our complex civilization and many additions to our penal laws heightens that necessity is no argument against the existence of the power and authority conferred by the code.

(1) 29 Cyc., p. 1366.   (2) 18 C. J., p. 1314, sec. 40.   (3) 29 Cyc., p. 1429.   (4) 29 Cyc., p. 1366.   (5) 18 C. J., p. 1314, sec. 40. (6) 18 C. J., p. 1314, sec. 40.   (7) 18 C. J., p. 1314, sec. 40.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Selvage & Selvage for Appellant.

H. C. Nelson for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendants in the trial court upon an action instituted to obtain a peremptory writ of mandate commanding the said defendants to pay certain claims against the county of Humboldt theretofore passed upon and allowed by the board of supervisors of said county. From this judgment the intervener appeals.

The facts of the case as disclosed by the transcript, in substance, are as follows: That for some considerable period of time prior to the beginning of this case the district attorney of the county of Humboldt, under and by virtue of the provisions of section 4307 of the Political Code, had employed certain persons to perform services as therein authorized and specified, and that those persons had assigned their respective claims to the petitioner in this action. On the part of the respondent it is claimed that the assignors of the respondent were employed for the purpose of detecting crime and gathering testimony or evidence showing the persons guilty of criminal offenses in the county of Humboldt, such testimony to be used and which was used by the district attorney in the prosecution of certain offenders in said county. On the part of the intervener it is alleged that

the assignors of the respondent were really traffic officers and officers employed by the district attorney to enforce the provisions of the Volstead Act, as adopted by the Wright Act of this state (Stats. 1921, p. 79). The testimony shows that some of the assignors of the respondent worked secretly, while others worked openly. Two of the respondent's assignors appear to have been employed more particularly to obtain evidence with reference to the violations of the state Motor Vehicle Act (Stats. 1913, p. 639). Three of them appear to have been employed in securing evidence as to violation of the liquor laws of the state. One of the assignors appears to have rendered services in securing evidence in all cases requiring investigation irrespective of the class of violations involved.

[1] While the conclusion might be drawn from the testimony in this case and set forth in the transcript that the assignors of the respondent acted at times in the capacity of traffic officers, and also as what is popularly termed "a dry squad" and at times made arrests, under the law of this state, it is the work to be performed or the duties to which one may be assigned that determines his status as an officer or an employee. The mere fact that an employee may perform services not coming strictly within the duties imposed upon him by reason of his employment, or which may be exercised by him in common with other citizens of the state, does not, it seems to us, change his status from that of an employee to that of an officer, or from that of an officer to that of an employee.

[2] First, let us determine the status of respondent's assignors. Under section 865 of the Political Code it is provided that "in all cases not otherwise provided for, each deputy possesses the powers and may perform the duties attached by law to the office of his principal." There is nothing in the record in this case which indicates that any one of respondent's assignors was authorized to exercise any of the powers or was vested with any of the powers or was authorized to perform any of the duties attached by law to the office of the district attorney. Section 4153 of the Political Code defines, in general, the duties of the district attorney as the public prosecutor for the county, to attend courts, institute proceedings before magistrates, draw all indictments, give opinions, prosecute actions for and in the

name of the county, to defend actions against the county, etc., none of which duties, or the authority to perform which, were passed to or devolved upon any of the respondent's assignors. They were in no sense deputy district attorneys.

[3] Were the assignors of the respondent performing services which the law casts upon sheriffs and constables, and so, in one sense, increasing their salaries by relieving them of the performance of duties required by law? Section 4157 of the Political Code requires the sheriff to preserve the peace, to arrest and take before the nearest magistrate all persons who attempt to, or who have committed a public offense, prevent and suppress affrays, etc., attend courts, serve processes, and perform certain other duties enumerated in the section. Section 4187 of the same code in relation to the duties of constables sets forth that such officers shall serve all processes, attend justice courts in their townships, and act in certain other capacities. Neither one of said sections requires either a sheriff or any constable to act in the capacity of sleuth or detective. Thus it follows that if anyone is employed by the district attorney to perform services outside of the duties cast by law upon the sheriff or a constable, none of the provisions of the state constitution relating to the salaries of such officers are in any way affected, nor does the fact that such persons may go further and make arrests as private individuals may do, after having completed their investigations, in anywise cause their employment to trench upon the inhibitions of the constitution relating to the increase of the compensation of such officers by relieving them of the performance of certain duties. Some of the cases relied upon by appellant speak of the employment of persons under the authority of section 4307 as temporary employees. The instant case shows that the plaintiff's assignors were employed by the day, and that their services continued day by day in one or two instances for a considerable number of months. The employment, however, was temporary. It was for a specified wage and day by day, and only for the period of time during which the employee was actually engaged in performing the services to perform which he had been employed. [4] The mere fact that an employee by the day may work a considerable number of days, or for a considerable number of months, does not, we think, change the character of his em-

ployment, if his employment is otherwise authorized by the
codes.  If this were not true, no lengthy investigation could
ever be concluded.

[5] We turn now to a consideration of section 4307 of
the Political Code concerning county charges.  Subdivision
two of that section reads as follows: "The traveling and
other personal expenses of the district attorney, incurred
in criminal cases arising in the county, and in civil actions
and proceedings in which the county is ·interested, and all
other expenses necessarily incurred by him in the detection
of crime and prosecution of criminal cases, and in civil ac-
tions and proceedings and in all other matters in which the
county is interested" constitute a county charge.  The per
diem or compensation of the persons employed by the district
attorney in the instant case appears to have been fixed or
agreed upon between the district attorney and the board
of supervisors, the claims in all cases were countersigned by
the district attorney, presented to the board of supervisors
and allowed by them. . The necessity for such employment
and the determination of such necessity rests with the dis-
trict attorney and the board of supervisors.  We think, in
the absence of fraud, that the determination of the necessity
by the board of supervisors and the district attorney has
the same weight as a finding of fact by a trial court in any
contested case and relieves us of any inquiry further than
to ascertain if the board of supervisors and the district
attorney had jurisdiction under the law to determine the
necessity for the employment, to make the employment and
fix the compensation.  [6] The section itself expressly
authorizes the payment of all expenses necessarily incurred
by the district attorney in the detection of crime and prose-
cution of criminal cases.  It does not limit the employment
for the purpose of detection of crime to any particular
specified cases.  The district attorney may not know, and
probably does not know, in the first instance, the persons
guilty of crime.  If he did, there would be no necessity
under the statute for employing someone to detect the crimi-
nal.  The district attorney may be conscious that the penal
laws of the state are being violated, and is yet absolutely
unable to place his hand on the violator.  That this is true
in regard to violators of the motor vehicle laws and the
liquor laws of the state does not render the employment of

someone to detect the guilty parties any less within the provisions of the code sections than if the circumstances coming to the attention of the district attorney indicated that someone had committed the crime of murder. In that case the statute gives the dictrict attorney the authority to employ someone to detect the offender. The fact also that violators of the motor vehicle laws and the liquor laws are constant and continuous does not tie the hands of the district attorney in regard to the employment of someone to detect the offenders, but, on the contrary, increases the necessity and almost imperatively demands the exercise by the district attorney of the powers conferred upon him by the provisions of section 4307 of the Political Code. [7] While the legislature may not have contemplated at the time of the adoption of the code the violations of the specific laws to which we are referring, nevertheless the general language of the code indicates that the legislature had in mind the conferring upon the district attorney the power to employ persons to detect the commission of any crime whatsoever without any reference as to its particular designation, and the further fact that our complex civilization and many additions to our penal laws heightens that necessity is no argument against the existence of the power and authority conferred by the code. From what we have said, we think it is unnecessary to take up and consider the various decisions of the supreme and appellate courts of the state holding that the appointment of additional deputies for county officers after their election violative of certain provisions of the constitution, as we do not see their application to the instant case, nor do we think the case of *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120], determinative of any of the issues involved herein. That case has to do with the creation of additional offices, nor do we think that the case of *Logan* v. *Shields,* 190 Cal. 661 [214 Pac. 45], is controlling in this case. In the case of *Logan* v. *Shields, supra,* the employment was not made under the provisions of the section of the Political Code with which we are dealing, but was made purely and simply as a traffic officer with duties of patrolling the highways and arresting speeders as they came along under his personal observation.

In the case of *Langdon* v. *Koster*, 157 Cal. 39 [106 Pac. 209], the supreme court had to do with the question involving the validity of the appointment of one William J. Burns, as special agent, in the detection of crime in the city and county of San Francisco, at the rate of $625 per month, and of certain enumerated special assistants at the rate of $150 per month, aggregating the total sum of $2,650 per month. The court held in that case that section 4307 of the Political Code authorized such employment and made the expenses so incurred a county charge, and also used this language: In answer to the argument that the district attorney had at his call the police force of the city and county of San Francisco and the detective department thereof, "but to this it must be answered that the board of supervisors in authorizing the expenditures were the judges of the necessity, and only in a plain case of an abuse of discretion would their judgment be subject to reversal." This court, in the case of *Thiel Detective Co.* v. *The County of Tuolumne*, 37 Cal. App. 423 [173 Pac. 1120], has also held that the authority is given the district attorney, under said section of the Political Code, to make employment of an agent to detect crime and that the expenses therefor constituted a proper county charge. Practically the same holding is had in *Humiston* v. *Shaffer*, 145 Cal. 195 [78 Pac. 951], *Victors* v. *Kelsey*, 31 Cal. App. 796 [161 Pac. 1006], *County of Yolo* v. *Joyce*, 156 Cal. 429 [105 Pac. 125], and *Rocca* v. *Boyle*, 166 Cal. 94 [Ann. Cas. 1915B, 857, 135 Pac. 34]. Some of the cases take up the charter of the city and county of San Francisco containing provisions similar to those found in section 4307 of the Political Code, and in the opinions speak of the employment as temporary, but, in view of the fact that the holding in the case of *Langdon* v. *Koster* approves the employment by the month, we do not think that an employment by the day, even though continued for a considerable number of days, can be held to affect the validity of the appointment, or have any particular bearing upon the issues herein involved, because, as heretofore stated, the necessity for the detection of crime may be continuous and the services rendered every day, and, if so, the employment would be legal.

In the case of *Ford* v. *County Board of San Diego*, 189 Cal. 704 [209 Pac. 993], and relied upon by appellant, the

facts stated by the court show that the employment of the persons whose compensation was there involved was to perform the services and duties which the law required to be performed by the county assessor, and being duties which the law imposed upon the county assessor, it was not within the power of the board of supervisors to relieve him of that obligation by the appointment of an advisory board. The assessor being required by law to perform the functions there involved, the responsibility could not be shifted to somebody else, nor could the assessor be relieved of the expense of making the appraisement by the board of supervisors of the county employing someone to perform the services for him, or to assist him in such performance. If the laws of this state required the district attorney to perform the services which were performed by the respondent's assignors, then and in that case the authorities relied upon by the appellant would be controlling, and no power would be given to the district attorney or the board of supervisors to make an appointment such as herein involved. But, as the circumstances are entirely different, the ruling of this court must be in accordance with the doctrine laid down in *Langdon* v. *Koster, supra,* and similar cases. The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1924.

Lawlor, J., and Lennon, J., dissented from the order denying a hearing in the supreme court.